HENRY C. CLARK *v.* JOSEPH C. PECKHAM, City Treasurer.

The City of Providence has an implied power, arising from and incident to its duties in relation to the streets and highways within its limits, not only to construct drains upon the surface of the streets to carry off the water coming upon them in any way, but also to construct drains or sewers beneath the surface when necessary for a similar purpose. But the City is liable for injuries resulting from the making of such drains or sewers, if, by making them to prevent a nuisance, it creates a nuisance in another place, and merely transfers it from one locality to another.

No action for such nuisance can be maintained in favor of an individual, simply because the City might be indicted. An individual is only entitled to sue when he has suffered some special damage above that arising to the public generally. Only the owner of land can sue for an injury caused by building a drain upon it.

A corporation is liable for an act which would give a right of action against an individual, if done by authority of the corporation, or of a branch of the government authorized to act for it, or if the act be ratified by the corporation or by its officers.

Case and not trespass is the proper form of action, where a suit is brought for consequential injuries caused to the land of the plaintiff by an act done on other land not owned by the plaintiff.

The Dorrance Street Association laid out what is called Dorrance street wharf into thirteen lots, leaving an open space on every side, all of which they declared should be kept open for the benefit of the owners of the thirteen lots, and should be owned by the owners of the lots as tenants in common. The open space on the southwesterly side of the lots was declared to be bounded by Dorrance street and Dorrance street dock, and to extend from the river to the street leading from Dorrance street to Central street. *Held*, that this agreement recognized the line of Dorrance street as extending to the dock.

The plat and agreement of the Dorrance Street Association held to be an offer of dedication of the land designated on the plat as Dorrance street, to the purposes of a highway, and also held to show no title in any one individual to the strip of land in part flooded by tide water, designated on the plat as Dorrance street dock.

ACTION of the case to recover damages of the City of Providence, for injuries caused by filling up the dock of the plaintiff. The essential parts of the declaration were as follows:—

" Henry C. Clark, of Providence, in said county, complains of Joseph C. Peckham, City Treasurer, summoned by the sheriff in an action of the case :—

For that the plaintiff, at said Providence, heretofore to wit, on the       day of       and continually from' thence hitherto having been and yet being interested in and possessed of that certain wharf estate, situate in the said Providence, at the foot of Dorrance street, and known as the Dorrance street wharf, and of the dock, property, estate, and rights appurtenant thereto, the said city of Providence well knowing the premises, and contriving and intending to injure the plaintiff in his said estate and rights, have, during all said time, wrongfully so used and maintained, and allowed to be so used and and maintained, and still do wrongfully so use and maintain, that large sewer generally known as the Dorrance street sewer, for the drainage and sewerage of the adjacent and neighboring parts of the said city, as to cause the same wrongfully and injuriously to discharge and empty into said dock large quantities of dirt, sediment, filth, and other matter brought down by said sewer, whereby said dock, during all said time, has been and still is greatly filled up and obstructed, by reason whereof the plaintiff, during all said time, has been and still is unable to use his said wharf and dock to as good advantage as he otherwise might have done; and has lost the large rents, profits, wharfage, and income which he might and would otherwise have received therefrom ; and by reason whereof, and of the nasty, noisome, foul, stinking, and unwholesome stench, vapors, and smell, arising from said sewer, and from the filth and other matter discharged, washed, and thrown therefrom as aforesaid into said dock, and into the bulkhead, wrongfully erected, and caused to be erected and maintained by said city and its officers, across the end of said dock before and in front of the mouth of said sewer, the plaintiff during all the time aforesaid, has been and still is greatly annoyed, disturbed, and incommoded in the occupation of his said dock and wharf property, and the market and rental value thereof much decreased ; and the plaintiff has in consequence of said sewer, so wrongfully maintained as aforesaid by said city during

all said time, suffered and sustained other great wrongs and injuries in his said estate, and in his personal occupation of the same, to the damage of the plaintiff, fifteen thousand dollars, as laid in his writ," &c.

At the trial of the case at the March term, 1868, of the Supreme Court for this county, before Mr. Justice Potter and a jury, the plaintiff offered evidence to show, that the city of Providence by establishing and maintaining a sewer, known as the Dorrance street sewer, had caused injuries to his wharf and dock substantially as alleged in the aforegoing declaration.

The plaintiff derived his title to the dock and wharf from certain parties known as the Dorrance street Association, who after the establishment of a harbor line for the city of Providence, filled up land formerly flowed by tide water, and entered into an agreement respecting this dock and wharf and the adjacent premises, in the following terms :—

" GENERAL AGREEMENT OF THE DORRANCE STREET ASSOCIATION.

This Agreement, made, entered into, and executed, this fifth day of February, in the year of our Lord one thousand eight hundred and twenty-nine, by, between and among the persons hereinafter named and described, who compose the Dorrance Street Association, so called, and by that name and style as tenants in common, own and are seized of the estate called the Dorrance Street Estate, situated in the southwesterly part of said Providence, on the west side of the river, consisting of lands, stores, wharves, docks and other improvements, to wit : Nicholas Brown, Thomas P. Ives, · Edward Carrington, Cyrus Butler, Benjamin Hoppin, Thomas C. Hoppin, Paris Dyer, Stephen Waterman, and Charles Dyer, all of Providence, in the county of Providence, in the State of Rhode Island and Providence Plantations, merchants, and Benjamin Dyer, of Cranston, in said county of Providence, merchant ; William R. Green, and Susan A. B. Green, his wife, in her right ; and Eleanor B. Burges, widow ; and Sarah P. Burrill, by her guardian, the said William R. Green ; James A. Burrill, by his guardian, Charles F. Til-

linghast; and James B. Curtis and Geo. W. Curtis, by their
guardian and father George Curtis, all of Providence aforesaid ;
the said James B. and George W. Curtis holding the fee of the
estate, but subject to the life estate of their said father as tenant
by curtesy; the said guardians being duly authorized to act in
behalf of their respective wards, by virtue of Resolutions of the
General Assembly of the State of Rhode Island and Providence
Plantations, passed at their last January session for that purpose,
Witnesseth,

That, for the purpose of dividing said estate, now held by
them respectively as tenants in common, in the *most convenient*
and *beneficial* manner, it is mutually covenanted and agreed by
and between the parties as aforesaid, for themselves and their
respective heirs, executors, administrators and asigns,—

First: That the plat of the said Dorrance streetestate, made
and taken for the benefit of the proprietors thereof, by Benoni
Lockwood, and bearing date on the twenty fourth day of Octo-
ber, in the year one thousand eight hundred and twenty seven,
be and the same is hereby adopted and established as a true and
perfect plat of the estate so held by us as tenants in common,
and that the lots and numbers as marked out and specified on
said plat be the true and correct lots and numbers referred to and
intended in all the deeds and releases which may be made and
executed by the several proprietors of said Dorrance street estate
for the division or partition thereof, *among the owners thereof* re-
spectively ; which said plat, the parties hereto mutually covenant
and agree shall be recorded in the records of the town of Provi-
dence for deeds and land evidences, at the expense of the pro-
prietors, and *for their mutual security.*

Secondly : That all the land, wharf, and docks, north-east-
erly of the thirteen store lots on Central wharf, so called, which
said lots are numbered on said plat, one to thirteen inclusive ;
all the land, wharf and docks south-easterly of said thirteen store
lots, and all the land, wharf, and docks south-westerly of said thir-
teen store lots, between said lots and the north-easterly side of
Dorrance street, and Dorrance street dock, so called, and extend-
ing from the river to the street, running from Dorrance street to

Clark *v.* Peckham, City Treasurer.

Central street, on which said street the said thirteen store lots are bounded north-westerly, shall be forever kept open and unincumbered, for the use and benefit of the owners of the said thirteen store lots, and the fee simple of the estate, land and docks, thus provided to be forever kept open, free and unincumbered, shall belong to the respective owners of the said thirteen store lots, their heirs and assigns, as tenants in common, forever.

Thirdly :   And it is further mutually covenanted and agreed, that no brick or stone, or other building more than thirteen feet high, shall be placed or erected on the said two store lots, numbers twelve and thirteen, as marked on said plat, except to compare and be in unison in style, materials and structure with the buildings on the lots numbers one and two. The said street at the north-westerly end of the said store lots, shall be forty feet in width, and kept open as a passage forever, from Dorrance street to Central street, free and unincumbered.

Fourthly :   And it is further mutually covenanted and agreed, by and between the parties respectively, that the lots from number fourteen to twenty-one inclusive, as located on said plat, shall extend from Dorrance street to Central street, and shall cross said Central street to Peck's wharf, and embrace all the lands lying between the easterly line of said Central street and Peck's wharf, and between the south-easterly line of lot number fourteen, and the north-easterly line of lot number twenty-one, and that the dividing line of said lots from numbers fourteen to twenty-one inclusive, shall continue in the same direction to said Peck's wharf, as the said lines run from Dorrance street to Central street, as marked out on said plat. That part of said lots which is situated between the easterly line of said Central street, and the westerly line of Peck's wharf, shall, or may be filled up by the proprietors of said lots, as far southwardly as the north-westerly line of lots, numbers twelve and thirteen, whenever the proprietors aforesaid shall agree so to do. But that part of said lots, from number fourteen to number twenty-one inclusive, which is situated between the westerly line of said Central street, and a line drawn north-westerly in continuation by the north easterly side or line of the block of eleven stores

now erected on said Central wharf, shall be and remain open, unobstructed, and not built on until said Central street shall be filled up and made passable as far south-easterly as the north-westerly line of the store lots numbers twelve and thirteen.

Fifthly: And it is further mutually covenanted and agreed, by and between the parties before named, that all the streets, lands, docks, and wharves, on the south-westerly side of Dorrance street aforesaid and Dorrance street dock so called, and on the northerly side of Ship street and Ship street dock, so called, as now marked, laid out and defined by the said plat of the Dorrance street estate, and not embraced in any lots marked out on said plat, shall be and forever remain open and unencumbered for the purpose of passing and repassing upon and over the same. And the several proprietors of the lots situated on said streets and docks shall have a right to collect wharfage for the use of their lands and docks in front of their respective lots, as marked out on said plat, and the fee simple of the said streets, lands and docks, shall belong to and vest in the owners of the lots adjoining the said streets and docks, as part and parcel of their said lots, but not to be encumbered, built upon, or obstructed in such way and manner as to impede the free passing and repassing upon and over the same, as aforesaid.

Sixthly: And the parties aforesaid, further mutually covenant and agree for themselves, their heirs, and assigns, to and among each other, that all the deeds, releases and agreements entered into, or which may hereafter be entered into between the parties to this agreement or any of them, for the partition or division of the said Dorrance street estate, shall be deemed taken and considered, subject to all the provisions, conditions and restrictions, contained in this general agreement.

Seventhly: And it is further mutually covenanted and agreed by and between the parties aforesaid, that the person or persons to whom lots numbers twelve and thirteen shall be assigned in the partition or division of the Dorrance street estate, shall be entitled and have a right, whenever he or they may build on said lots in the style and manner herein before provided, to unite and connect his or their building on said lots, with the present

Plan of
the Dorrance St. Association Lands,

Surveyed & Plotted Oct. 24th 1827.

By Benoni Lockwood.

Scale 100 ft. to an inch.

Chas. H. Crosby & Co. Lith. Boston.

permanent wall, standing on the north-westerly line of lot number eleven, without being required to make any payment or compensation therefor.

In witness whereof, we have hereunto severally and respect ively set our hands and seals, this fifth day of February, in the year of our Lord one thousand eight hundred and twenty-nine."

The plat referred to .in the foregoing agreement, as inserted on the opposite page, will show the location of the premises. The plaintiff's dock and wharf were situated upon Providence river, a river running through the city of Providence, and navigable up to and for some distance above the said wharf.

A verdict having been rendered in favor of the plaintiff for eight thousand dollars, the defendants moved for a new trial, on the ground that the verdict was against the evidence and the weight thereof, that the damages were excessive, and for the following alleged errors on the part of the judge presiding at the trial in his instructions to the jury :—

Because the judge before whom the case was tried, instructed the jury that the General Assembly had not expressly granted to the city of Providence a right to construct sewers in the said city, and that said city had no such implied or incidental power to be inferred from any of the powers granted to the city. And because the judge, before whom the case was tried, refused to instruct the jury, as requested by the defendant, as follows :—

1. That the defendant corporation was not liable to be sued by an individual for damage sustained by him from, and as a consequence of the proceedings of a corporation, as alleged and proved ; and this, although the plaintiff might sustain an action for the same against the surveyor of highways, or other officers of the corporation, if the acts of the officers were without or against law. Which instruction the court refused to give, and did instruct the jury that the plaintiff had properly brought his suit against the city.

2. That the plaintiff's documentary evidence failed to show any title in him, or any grantor of his, in and to any part of the strip of land, in part still flowed by tide water, and designated

in the papers referred to as Dorrance street and Dorrance street dock, and designated on the plat made and recorded by the Dorrance Street Association in 1829, as Dorrance street. Which instruction the court refused to give, and did instruct the jury that the plaintiff had such an interest in said Dorrance street and said dock as authorized him to bring this suit.

3. That the owner of the lot at the head of the dock, whoever that might be, has had since 1815, and now has, a right to fill out to the harbor line, without regard to the wishes and interests of the owners of the adjacent lots, one of whom, to wit, the plaintiff, has filled out his lot. Which instruction the court refused to give, and did instruct the jury, that if the Dorrance Street Association owned the fee, they would have the right to fill out between the wharves, if they had not precluded themselves by their own agreement.

4. That a riparian proprietor in a seaport city, like Providence, who fills out to the harbor line under an act of the Assembly, cannot improve and occupy the wharf thus constructed in such a manner as to prevent the public from landing thereon from boats and larger craft. Which instruction the court refused to give, and did instruct the jury that a person who filled out to the harbor line had a right to have the exclusive use of that wharf for his own vessels.

5. That the plat and agreement of the Dorrance Street Association, placed on record by them in 1829, and put into this case, was in legal effect a dedication of the strip of land designated on said plat as Dorrance street, to the purposes of a highway by the Association. Which instruction the court refused to give, and did instruct the jury that the agreement and plat were connected together, and that the plat was part of the agreement, and that it could not be fairly construed as an intention to dedicate, any farther than they laid the lines upon the plat ; that it could not be constructed as an intention to dedicate, to the public use all the wharves, because those lines extended out and took in a considerable portion of each side. So far as the lines of Dorrance street extended, it might be a fair implication to dedicate it to the public, but no farther than these lines extended.

*Payne and Parkhurst, with whom was Caleb Cushing, for the defendant, in support of the motion,* contended that the verdict was against the evidence, that the damages were excessive; and also contended, that the city of Providence had both express and incidental power to construct sewers. City Ordinances, pp. 32,38. That the city was not liable to suit for the injury complained of. *Stewart* v. *New Orleans,* 9 La. 461; *Bennett* v. *New Orleans,* 14 La. 120; *Bentley* v. *Mayor of New York,* 3 Hill, 588; *Rounds* v. *Mumford,* 2 R. I. 154. That the plaintiff under the agreement of the Dorrance Street Association had no title to maintain this suit. That since the establishment of a harbor line in 1815, the owner of the lot at the head of the dock had had the right to fill out to the harbor line, and the plaintiff had no right to complain. *Manchester* v. *Hudson,* (an unreported case decided by the Supreme Court of this state some years since.) That the instruction of the court that a party who fills in front of his land to the harbor line, has a right to the exclusive use of a wharf, was erroneous, as he might or might not have such right, depending upon circumstances of any particular case. And that the plat and agreement of the Dorrance Street Association was a dedication of the strip of land designated as Dorrance street.

*Eames and James Tillinghast, for plaintiff, contra,* contended that the verdict was not against the evidence nor the damages excessive.

As to the latter ground for the motion, they contended, that this being an action of tort for damages that could not be well computed, it was settled law that the verdict would not be set aside unless it clearly appeared that the jury committed some gross and palpable error, or acted under improper influence or bias, or had totally mistaken the rules of law by which the damages were regulated, citing Sedgwick on Damages, (ed. 1868) pp. 713, etc. side page 601, etc. and cases cited.

As to the instruction of the judge presiding at the trial, respecting the right of the city to construct sewers, they cited *Sarle* v. *Arnold,* 7 R. I. 582, to the point that the attention of the court not having been particularly recalled at the time to the

portion of the charge then excepted to, it was now too late to object to it, after the verdict, and that there was no error in the instruction, because it carefully discriminated between drains whether above or below ground, to take the surface gutter drainage of the streets, and a sewer for the common sewerage of the city, such as this was shown to be used for. Whatever might be said of the power to make the former as incidental to the proper care of the streets, (and as to which the defendant had no ground for exception, for the jury were expressly instructed that the city had the power) as to the latter as to sewers, there was no express grant to the city, of power to make them, shown, and both in England and this country their construction had always been regulated by statute. See English Sewer Acts. *City of Boston* v. *Shaw,* 1 Met. 135–6. Compare also Drain Act, City Ordinances, 1854, pp. 74, &c. Also new act of Jan. 1869, (since the case was tried,) Statutes, ch. 807.

Upon the exceptions taken to the refusals of the presiding judge to instruct the jury as requested by the defendant, they made the following points, and presented the following authorities:—

*First exception.* To the ruling that the action was properly brought against the city. This ruling is fully and amply sustained by the authorities of which we cite a few only. *Thayer* v. *Boston,* 19 Pick. 511; *Perry* v. *Worcester,* 6 Gray, 449; *Wildreth* v. *Lowell,* 11 Gray, 345; *Parker* v. *Lowell,* 11 Gray, 353; *Child* v. *Boston,* 4 Allen, 41; *Frieze* v. *Mayor, &c. of New York,* 3 Hill, 612; *Mayor of New York* v. *Bailey,* 3 Hill, 531; also cited in *Russell* v. *Mayor of New York,* 2 Denio, 483; *Lacour* v. *Mayor, &c., of New York,* 3 Duer, 406; *Rochester White Lead Co.* v. *Rochester,* 3 Comst. 463; *Storrs* v. *Utica,* 17 N. Y. 104; *Kavanagh* v. *Brooklyn,* 38 Barb. 232; *Barton* v. *Syracuse,* 37 Barb. 292; *City of Dayton* v. *Pease,* 4 Ohio State, 80; *Goodloe* v. *Cincinnati,* 4 Ohio State, 500; *City of Detroit,* v. *Carey,* 9 Mich. 165; *Richardson* v. *Boston,* 19 How. 263.

*Second exception.* To the ruling that the plaintiff had shown such an interest in the dock as authorized him to bring this suit. This instruction was clearly right, and fully sustained by the evidence. 1. The defendant was entitled to no such

instruction, as it was designed to mislead the jury, by excluding from their consideration the parol evidence of the user of the dock for a long term of years as a private dock. 2. And the Dorrance Street Association Agreement, put in evidence with the plaintiff's deeds and leases, showed sufficient title in him to maintain the action. 3. The dock was shown to be entirely within the harbor line, and to have been built by the plaintiff's ancestors in the title, and used by them and him exclusively as a private dock for more than forty years. 4. Had the dock been a highway, as claimed by the city, the plaintiff, as owning the wharf bounding upon it, would be entitled to damages for the nuisance created on it directly in front of his estate, from which he proved he suffered special damage. *Richardson* v. *Boston,* 19 How. 270.

*Third exception.* To the ruling that the owner at the head of the dock had not the right to fill out to the harbor line without regard to the wishes and interests of its owners of the adjacent lots. Clearly right, for the general agreement of the Dorrance Street Association, expressly secures to the owners of the wharf lots the use of this dock *as a dock.*

*Fourth exception.* The ruling, even as here stated, falls within all the authorities, for the harbor line becomes the shore line at once, and all the authorities agree that to that line the riparian owner's title to his wharf is exclusive. *Wetmore* v. *Atlantic White Lead Co.* 37 Barb. 70; *Austin* v. *Carter,* 1 Mass. 230; *Commonwealth* v. *Alger,* 7 Cush. 75, 79, 81.

The tendency of the decisions in this country, and the better American doctrine, as applied both to tide waters and to the inland navigable lakes and rivers, is, that the riparian owner may wharf out for his own exclusive use, so that he does not create a public nuisance by practically interfering with navigation. *Dutton* v. *Strong,* 1 Black, 1 ; *Steamer Magnolia* v. *Marshall,* 6 Am. Law Reg. N. S. 510 ; *Bainbridge* v. *Sherlock,* 7 Am. Law Reg. N. S. 720 ; *Grant* v. *Davenport,* 18 Iowa, 179 ; *Bell* v. *Gough,* 1 Zab. 156, 3 Ib. 624 ; *State* v. *Jersey City,* 1 Dutch; 525 ; *State* v. *Brown,* 3 Dutch, 13 ; *Chapman* v. *Kimball* 9 Conn. 38 ; *Simons* v. *French,* 25 Conn. 346.

*Fifth Exception.* This instruction as to the effect of the Dorrance Street Association Plat and Agreement, was clearly right. And the instruction asked for was clearly wrong. For the mere making and recording of a plat and agreement like these cannot of themselves make a dedication. They are at the most but an offer of dedication, which remains a mere offer, and is revocable at any time until accepted by actual user. And this aside from the fact that there could be no dedication as a highway of this dock flowed by tide water. *Richardson* v. *Boston,* 19 How. 194, 195; *Simmons* v. *Mumford,* 2 R. I. 172.

BRAYTON, C. J. * The plaintiff alleges in substance that he has been and is possessed of a wharf estate known as the Dorrance street wharf, and of a dock appurtenant thereto, and of other rights also appurtenant which are not specified. The only appurtenance which he sets out as the basis of any claim, is the dock.

He alleges that by the acts of the defendant, (the city,) he has been unable to use his said wharf and dock to so good advantage as he might otherwise have done, and has lost large rents, profits, wharfage, and income which he might have received, and has been and still is greatly annoyed, disturbed, and incommoded, in the occupation of his said dock and wharf.

The acts of the defendants, by which this injury has been caused, he alleges to be, that they have during all the time of his possession so used and maintained, and wrongfully, a certain drain or sewer, called the "Dorrance street sewer," and caused the sewer wrongfully to discharge into said dock dirt, sediment, filth, and other matter in large quantities, that the dock has been greatly filled up and obstructed so that he could not use said wharf and dock as before; that from the matter discharged into said dock have arisen noisome and unwholesome stenches and smells, by which he has been greatly annoyed and incommoded in his occupation of said wharf and dock.

What is now denominated Dorrance street sewer in the plaintiff's declaration, was originally constructed to carry off the wa-

---

DURFEE, J., being interested, did not sit in the trial of this case.

ter accumulating in Broad street, at the head of what was then called Dorrance street, to the nuisance of that neighborhood and of the streets. It was made upon the complaint of many people. Upon the report of the standing committee on highways, to whom the complaint was referred, the city council directed the surveyor of highways to cause a suitable culvert to be laid from Broad street through the middle of Dorrance street, to the river. In obedience to this resolution and direction, the so-called sewer was made and has since been maintained.

Upon the trial it was claimed, in defence, that the city was empowered to build and construct sewers within the city, and if injury resulted to individuals in consequence of such construction, the city was not responsible.

Upon this point the judge instructed the jury, that the General Assembly had not expressly granted to the city the right to construct sewers, and that the city had not such power to be implied from, or as incident to, any of the powers granted to the city.

This direction is claimed to be erroneous, and is one of the alleged grounds for a new trial.

We have not been referred to any statute giving to the city any powers, in which the term sewer is used. The counsel, who argued the case, were not agreed as to the legal definition of the word sewer, or what constituted a sewer, and we have not been referred to any case or text book for such definition.

It is defined to be " A drain or passage to carry off water under ground," and " A subterranean canal, particularly in cities."

The argument of the plaintiff's counsel against the existence of the power, is based upon what they conceive to be the proper definition of a sewer, what constitutes it, namely, that it is a passage or canal underground by which filthy, corrupt, and offensive matter may run off or may be carried off by water ; and so they concede the power to construct drains to carry off water beneath the surface, while they deny the right to make one which is to carry away matter which is noisome and offensive. They give no authority for such a definition, either in law or philology.

There can be no doubt that there is an implied power in the city, arising from the duties imposed upon it in relation to the streets and highways within its limits, and as incident to the proper discharge of those duties, to construct drains upon the surface of the streets to carry off the water falling upon them, or coming upon them in whatever way, either to prevènt their accumulation at points where it would be injurious, or to pre· vent the waste or washing away of the streets.

The same duties would oftentimes require, and still more frequently render it expedient and proper, to carry it off under ground.

The water, in its passage off, whether upon the surface or beneath it, must necessarily carry along with it the matter thrown or deposited in gutters, and coming upon the surface from travel,—the natural accumulation of a city, all the matter not pure, but of every degree of impurity to the last degree. If noisome and offensive, it would impose upon the city a high duty, to cause it to pass off without being an offence in its passage.

The streets are dedicated to all such necessary uses. It is not, however, to be inferred from this duty or this necessity, that the city may not subject itself to liabilty, if, in making such drains or sewers for the purpose of preventing a nuisance, it creates a public nuisance in another place, and so merely transfers it from one locality to· another. For such a drain, creating a public nuisance, the city of Boston was indicted and convicted.

If, then, the city, by means of this drain, either from its improper construction or improper use, have accumulated at this dock, corrupt matter producing noisome and unwholesome stenches, creating there a public nuisance,—if they have, by carting down into the tide water such an accumulation of mud and earth as to interrupt the passage of vessels, there caused a nuisance to navigation, they would be indictable.

An action, however, could not be maintained in favor of an individual, simply because the city might be indicted. He must suffer some peculiar and special damage above that arising to the public generally, to entitle him to sue. If he can prove such special damage, he is entitled to sue for it.

The right of action as to the injury to a wharf is recognized in *Richardson* v. *City of Boston*, 19 How. 263, holding that the plaintiff was entitled to sue if he could prove that the drain in that case had lessened the depth of water at the head of the wharf, where the city did not own the soil.

It was made a point in the argument, that a portion of the land here called Dorrance street was private property, and not in fact a public street, and so the city had no right to make a sewer through it, and that the city might be liable to the plaintiff, when it would not be were the title in the city. We do not think this can vary the plaintiff's right, he not being the owner. No one but the owner of the land can sue for any injury caused by building the drain upon it.

The court was requested to charge the jury, that the plat and agreement of the Dorrance Street Association, placed on record by them in 1829, in evidence on the trial, were in legal effect a dedication of the land designated on the plat as Dorrance street to the purposes of a highway ; and the refusal of the court so to charge is claimed to be an error.

The judge held, and so charged, that the agreement and plat were a dedication so far as the lines were actually drawn upon the plat, and no further.

When we read the agreement, which refers to the plat, we find that these proprietors laid out what is now called Dorrance street wharf into thirteen lots, leaving an open space on every side, all of which they declared should be kept open for the benefit of the owners of the thirteen lots, and should be owned by the owners of the lots as tenants in common ; that the open space on the south-westerly side of the lots was declared to be bounded by Dorrance street and Dorrance street dock, and to extend from the river to the street leading from Dorrance street to Central street, recognizing thus the line of Dorrance street as extending to the dock.

The street on the northwest end of the lots was to be forty feet in width, and to be kept open from Dorrance street to Central street. By the fifth clause they declare that all the streets, lands, docks, and wharves on the southwesterly side of Dorrance

street aforesaid and Dorrance street dock, so called, and on the northerly side of Ship street and Ship street dock, so called, as now marked on the plat, and not embraced in any lots marked out on the plat, shall forever remain open and unencumbered for passing and repassing. They provide that, on the southerly side of Dorrance street dock and street, these open lands, whether streets or wharves, should belong, not to the owners of the lots in common, but each owner should hold in severalty, that which lay in front of his lot, and as part of it.

Here, again, they recognized Dorrance street as extending to the so-called Dorrance street dock upon a line common to both, and they leave both the dock and the street unappropriated, though they provide that the owners, for the use of the land in front of their lots, may collect wharfage.

The residue of the lands of the association are laid down upon the plat as bounding upon Dorrance street, as the line is actually drawn upon the plat, and are declared to be bounded upon it; but the agreement neither gives to the owners of the lots nor recognizes any right in them to, any portion of the space designated as Dorrance street.

The dedication, gift, or offer by the association to the public, for public use, is not equivocal; and it should have been left to the jury to inquire whether the offer had been accepted.

The court were requested, also, to charge the jury, that the documentary evidence put in by the plaintiff did not show in him any title to the strip of land in part flooded by tide-water, designated on the plat referred to as Dorrance street and Dorrance street dock; but the court did instruct them that the plaintiff had such an interest in it as authorized this suit. Upon an examination of the papers, in their bearing upon the question of dedication, we have found that the strip of land, whether flowed or not, was left by the articles of agreement of the association entirely unappropriated, undisposed of, not granted; nor is there any provision as to the other streets and the other docks, that the land should be held or occupied by the owners of any lot or lots into which these lands of the association were divided, or that it was intended as an appurtenance to any land, if it

could be made appurtenant. There is no attempt apparent to vest in any body any title to this strip of land.

The lands as to which any agreement is made are simply bounded upon it, describing it as street and as dock, the same lines which bound the street being extended into the dock to the harbor line as the limit of the unappropriated dock; and we think the defendant was entitled to the instruction asked for.

So far as the plaintiff alleges any substantial injury to the dock, and claims damages therefor, this action would not be maintainable. He alleges that he has been and is possessed of the dock, and his injury is to that possession. It is merely a portion of the sea, (so much as flows between the wharves there,) which is a mere highway for vessels, and as to which the plaintiff has and can have no other right, than that of passage over and upon it. No length of time could give him possession more than the association under which he claims could give it, and they very properly did not attempt to give any.

The agreement of the association provided for a division, and the deeds convey simply the land, real estate not flowed by the sea, conveying with it whatever may be properly appurtenant.

The agreement speaks of right of wharfage as belonging to some of the land, but it was not necessary. He who had the lawful right to the wharf, if he used it as such, had all the right incident to such ownership, including the right to wharfage, and that whether it was mentioned or not as appurtenant.

The injury, then, for which this action is to be maintained, is that alleged to be done to the Dorrance street wharf, in the plaintiff's possession, by filling up the dock there so as to prevent access to it, and thereby preventing the profitable use, and disturbing him in the occupation by the stenches and smell created there.

It is made an exception to the ruling of the judge, and to his charge to the jury, that he refused to direct them that the plaintiff could not legally maintain an action against the city for maintaining the so called Dorrance street sewer, though he might maintain an action against the surveyor of highways, or

other officer of the corporation, for maintaining the same structure. If the maintenance or use of the sewer is actionable at all, so that the plaintiff could maintain an action against any one, there is no principle or rule which should shield the city from liability, if by the action of the authorities of the city it has directed the particular structure to be made, or has directed or controlled its use.

In making themselves principals, they cannot leave the liability to rest solely upon the servant whose acts they command and direct. In *Thayer* v. *Boston*, 19 Pick. 511, the court say a corporation is liable for an act which would give an action against an individual, if done by the authority of the corporation or of a branch of the government authorized to act for it upon the subject to which it relates, or if the act be ratified by the corporation or its officers. They are liable for negligence to the same extent as individuals, and for want of skill or care in their agents in construction of work or in repairing public sewers. *Lloyd* v. *City of New York*, 7 Seld. 369. These cases, and the case of *Richardson* v. *City of Boston*, 19 How. 263, and the other cases on plaintiff's brief, make it quite clear that a case is stated which is actionable against the city. The court had no right to say whether it was or was not proved.

But it was contended in argument that the action, to be sustained, should be trespass, and not, as here, an action upon the case; and this was argued upon the notion that the injury alleged was direct, and not consequential, and that the plaintiff was claiming in fee.

There is no allegation of title in fee. The plaintiff counts upon possession; and though he says he is interested in the property, he states no particular interest or estate. The injury alleged to the wharf is not direct, but consequential. No act is done upon the wharf. The act is done upon other land not owned or possessed by the plaintiff, but reaching in its consequences the plaintiff's wharf; as by a spout upon one's own building water is cast upon that of his neighbor. In all such cases the action is not trespass, but case.

Another exception to the charge to the jury is, that they were

not instructed, as requested, that the owners of the land at the head of the dock had the right to fill out the land to the harbor line, without regard to the wishes or interests of the owners of adjacent lots; but that the judge charged that they had the right, unless restricted by their own agreement.

This charge in its terms is entirely correct, but having been requested to direct the jury that this right was without condition, the charge implies that the owners by their agreement precluded themselves from filling out. There is not, in the documentary evidence in the case, any such express agreement that they would not fill out against the land into this dock.

But it is not material whether the right existed conditionally or unconditionally. The riparian owner has not exercised his right, and the defendants do not pretend that they were acting under this right by permission of such owner, or as his servant, in filling in this dock and obstructing the navigation there. It might be a defence in the mouth of the riparian owner, but not in another.

There was still another exception, namely, that the judge instructed the jury that under the act of the General Assembly fixing the harbor line, and permitting the riparian owner to extend his land to that line, such owner, having filled out, had a right to the exclusive use of the land for his own vessels, and refused to charge that such owner could not so improve and occupy it as to prevent other people and the public from landing thereon from vessels.

This point was not argued, nor was any authority referred to.

The point is not material to the case. It was matter of complaint by the plaintiff that it was with difficulty that he could reach the wharf with his own vessels and merchandise, from the obstructions, and that the difficulty of approaching prevented other vessels from coming there, from which he would have received wharfage and income.

*New trial granted.*